U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

OCT 25 2017

**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   No. 1:16-cr-00110-PB-01 |
| | ) |
| JOSEPH BOUCHER | ) |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John J. Farley, the Acting United States Attorney for the District of New Hampshire, and the defendant, Joseph Boucher, and the defendant's attorney, Simon R. Brown, Esquire, enter into the following Plea Agreement:

1.   The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an Information that charges him with possession of a pseudoephedrine with knowledge, or reason to know, of its wrongful intended use, in violation of 21 U.S.C. § 841(c)(2).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2.   The Statutes and Elements of the Offenses.

21 U.S.C. § 841(c)(2) provides, in pertinent part:

Any person who knowingly or intentionally –

**(2)** possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter;

. . . shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of . . . paragraph (2) involving a List I chemical. . .

21 U.S.C. § 841(c)(2) (West 2017 Revised Edition).

The defendant understands that the offense contained in Count One of the Information has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

FIRST, that on the date charged in the Information, that is, May 20, 2015, defendant knowingly possessed pseudoephedrine[1]; and

SECOND, the defendant possessed it knowing, or having reasonable cause to believe, that it would be used to manufacture methamphetamine, a Schedule II controlled substance.[2] Model Crim. Jury Instr. 9th Cir. 9.28 (2010).

3.  Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts, which would establish the elements of the offense beyond a reasonable doubt:

In 2015, the United States Drug Enforcement Administration (DEA) conducted an investigation into the clandestine manufacture of methamphetamine in the northern area of New Hampshire. At that time, the "one pot" method of clandestine methamphetamine manufacturing was commonly utilized by individuals in New Hampshire to produce "finished"

---

[1] Pseudoephedrine is a Schedule I listed chemical. See 21 U.S.C. ' 802(34)(K).

[2] It does not matter whether the defendant knew that the pseudoephedrine was a listed chemical. It is sufficient that the defendant knew or had reasonable cause to believe that it would be used to manufacture methamphetamine or some other prohibited drug. Model Crim. Jury Instr. 9th Cir. 9.28 (2010).

methamphetamine powder. The "one pot" method requires combining pseudoephedrine with common household chemicals and then shaking the mixture in a soda bottle.

Federal law regulates retail over-the-counter sales of products containing ephedrine (e.g., cold medicine products containing pseudoephedrine), imposes daily sales limits and thirty-day purchase limits, and among other provisions, requires the customer to show identification and mandates that a logbook be maintained concerning the customer's name and address and purchase information.[3]

As part of its investigation, the DEA reviewed records of pseudoephedrine purchases made at pharmacies in the Littleton, New Hampshire area and determined that on May 20, 2015, the defendant purchased WALPHED D tablets, 96 count, 2.88 grams, at the Walgreens Pharmacy, 274 Dells Road, Littleton, New Hampshire. On this date, the defendant possessed the WALPHED tablets, which contained 2.88 grams of pseudoephedrine, knowing, or having reasonable cause to believe, that it would be used to manufacture methamphetamine, a Schedule II controlled substance. A further review of pseudoephedrine purchase records maintained at this pharmacy and others in the Littleton, New Hampshire area from May 20, 2015 through March 31, 2016 indicate that on 23 additional occasions, the defendant purchased cold medicine products that contained pseudoephedrine, knowing, or having reasonable cause to believe, that they would be used to manufacture methamphetamine, a Schedule II controlled substance.

4.   Penalties, Special Assessment and Restitution.

---

3 See 21 U.S.C. § 830(d) and (e).

The defendant understands that the penalties for the offense are:

A.    <u>With Respect to Count One</u>:

     1.    A maximum term of imprisonment of 20 years (21 U.S.C. § 841(c)(1)(2));

     2.    A maximum fine of $250,000 (18 U.S.C. § 3571); and

     3.    A term of supervised release of not more than three (3) years, (18 U.S.C. § 3583(b)(2)).

The defendant also understands that he will be required to pay a special assessment of $100 ($100 per count) at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5.    <u>Sentencing and Application of the Sentencing Guidelines</u>.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.   The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

–4–

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6.  <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant have stipulated to the following:

The Government and the defendant agree that under U.S.S.G. § 2D1.1(c)(7), the applicable Base Offense Level is 26.

The defendant understands that the Court is not bound by the foregoing agreement and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  <u>Acceptance of Responsibility</u>.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.   The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

–6–

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.   To plead not guilty or to maintain that plea if it has already been made;

B.   To be tried by a jury and, at that trial, to the assistance of counsel;

C.   To confront and cross-examine witnesses;

D.   Not to be compelled to provide testimony that may incriminate him; and

E.   To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the

–7–

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and
voluntarily because he is guilty;

B.   is entering into this Plea Agreement without reliance upon any discussions with the
United States and without promise of benefit of any kind except as described in this
Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats,
force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty,
including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his
undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-party federal, state or local authority.   The

defendant also acknowledges that no representations have been made to him about any civil or

administrative consequences that may result from his guilty plea. The defendant understands such

matters are solely within the discretion of the specific non-party government agency involved.

The defendant further acknowledges that this Plea Agreement has been reached without regard to

any civil tax matters that may be pending or which may arise involving the defendant.

11.   Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated

–8–

guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.   <u>Satisfaction of Federal Criminal Liability; Breach.</u>

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.

     13.   <u>Waivers</u>.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

    1.      His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

    2.      All aspects of the sentence imposed by the Court if the period of incarceration is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

    B.     Collateral Review.

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

    1.      His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

    2.      All aspects of the sentence imposed by the Court if the period of incarceration is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel.   The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

        C.      Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

        D.      Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government to pursue an appeal as authorized by law.

        14.   <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

        15.   <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the

United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

    16.    <u>Agreement Provisions Not Severable</u>.

    The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Dated: 10/25/17

JOHN J. FARLEY
Acting United States Attorney

By: *Jennifer C Davis*
Jennifer Cole Davis
Assistant U.S. Attorney
NH Bar Association # 10222
53 Pleasant St., 4th Floor
Concord, NH 03301
jennifer.c.davis@usdoj.gov
(603) 225-1552

    The defendant certifies that he has read and/or had translated to him this 13-page Plea Agreement and that he fully understands and accepts the terms thereof.

Joseph Boucher, defendant      10/25/2017
    Date:

    I have read the above and explained it to my client, who advises me that he understands and accepts its terms.

     10/25/2017

-12-

Simon R. Brown, Esquire                    Date:
Counsel for Joseph Boucher, defendant

−13−